*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CHATTERSON, Minors.

UNPUBLISHED
September 08, 2025
1:47 PM

No. 372615
Hillsdale Circuit Court
Family Division
LC No. 22-000203-NA

Before: SWARTZLE, P.J., and GARRETT and YATES, JJ.

PER CURIAM.

Respondent-father appeals of right the trial court's order terminating his parental rights to his twin daughters, EC and NLC, and his twin sons, HC and BC, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (3)(c)(*ii*) (other unrectified conditions exist bringing the child within court's jurisdiction), (3)(g) (failure to provide the child with proper care or custody although financially able to do so), and (3)(j) (reasonable likelihood of harm if the child is returned to the parent on the basis of the parent's conduct or capacity). We affirm.

## I. FACTUAL BACKGROUND

These child protective proceedings began in March 2022, when the Hillsdale Department of Health and Human Services filed a petition requesting that the trial court take jurisdiction over EC, NLC, and their two half siblings. At the time, respondent-father lived in the home with EC, NLC, their siblings, and the children's mother,[1] although respondent-father and the mother were not married, and respondent-father's parentage of EC and NLC had not yet been established. The petition highlighted that the home was unsanitary and posed a danger to the children. Food, trash, feces, dirty diapers, and cigarettes were scattered around the home, and the home smelled of cat urine and marijuana. In addition, the petition highlighted allegations of domestic violence between respondent-father and the mother. Respondent-father and the mother admitted to the allegations in the petition at a preliminary hearing, so the trial court authorized the petition, took jurisdiction

---

[1] The trial court terminated the parental rights of respondent-father and the mother, but the mother is not a party to this appeal.

over all the children, and released the children to the mother's care under the supervision of the Department of Health and Human Services (the DHHS).

Respondent-father and the mother separated for some time. When BC and HC were born in May 2022, they tested positive for drugs. They were then brought within the jurisdiction of the trial court by supplemental petition. Respondent-father and the mother reunited and began living in the home again with all six of the mother's children, but respondent-father and the mother were unable to keep the home clean, and interpersonal conflict between them continued. Eventually, the children were removed from the care of respondent-father and the mother and placed under the care of the DHHS. EC and NLC were placed with foster parents, whereas BC and HC were placed with their maternal grandmother. Respondent-father's interaction with the children from that point forward was limited to parenting-time visits supervised by the DHHS.

Respondent-father's treatment plan in this case required him to complete, and show benefit from, parenting education, counseling, and domestic-violence services. But respondent-father had difficulty attending parenting-education classes and completing assignments. Respondent-father was discharged from one program for missing too many classes. Respondent-father's parenting visits with the children were inconsistent. Sometimes respondent-father engaged with the children, but other times he did not. During some visits, respondent-father kept the twin boys in highchairs. Many of respondent-father's visits centered largely on eating food that respondent-father brought for the children, with little active play. Supervisors from the DHHS testified that they often had to intervene for the children's safety because respondent-father was not paying enough attention.

Respondent-father had three different therapists during the course of the proceedings. One therapist whom respondent-father and the mother were seeing for couple's therapy discontinued services because respondent-father wanted to record the sessions without the mother's consent. Respondent-father exhibited a pattern of minimizing issues, blaming others, and claiming that he was being unfairly maligned during the proceedings. Once, respondent-father left an active audio recording device hidden in the couch of the DHHS's visitation room. The mother's visitation time was immediately after respondent-father's visitation time, and the recording device likely recorded at least a portion of the mother's visit with the children that day.

Respondent-father also exhibited problems with anger management. Although respondent-father asserted that he was never the aggressor, there were several domestic-violence incidents in the course of the case, including one in which respondent-father tore down a door, and another in which respondent-father was arrested by the police at gunpoint. On the weekend before the final hearing on termination of respondent-father's parental rights, he sent a threatening text message to his caseworker.

On a positive note, respondent-father maintained employment throughout the proceedings, and he obtained a vehicle and maintained an apartment. Although the apartment was small, it was clean, and it could be made safe for the children with some additional work. Ultimately, however, the trial court ordered the termination of respondent-father's parental rights, finding that that result was in the children's best interests. Respondent-father now appeals that decision.

## II. LEGAL ANALYSIS

We review for clear error a trial court's determination that statutory grounds for termination were proven by clear and convincing evidence and the trial court's finding that termination was in a child's best interests. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A finding is clearly erroneous if, even though some evidence supports the finding, we are nevertheless firmly and definitely convinced that the trial court made a mistake. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). We must afford deference "to the special ability of the trial court to judge the credibility of witnesses." *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016) (quotation marks and citation omitted). We "review de novo the interpretation and application of statutes and court rules." *In re Mason*, 486 Mich at 152. Applying these standards, we must consider whether the trial court erred in finding statutory grounds for termination and in concluding that termination was in the children's best interests.

## A. STATUTORY GROUNDS

At a termination hearing, the petitioner must establish by clear and convincing evidence a statutory ground for termination of parental rights under MCL 712A.19b(3). *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). The petitioner need establish only one statutory ground for termination. *In re Olive/Metts*, 297 Mich App at 41.

Here, the trial court, addressing respondent-father and the mother together, found statutory grounds to terminate parental rights under MCL 712A.19b(3)(c)(*i*), (3)(c)(*ii*), (3)(g), and (3)(j). In challenging those findings, respondent-father asserts that no statutory ground was proven by clear and convincing evidence. We disagree.

Pursuant to MCL 712A.19b(3)(c)(*i*), the trial court identified the conditions that led to the adjudication as domestic violence, and the unsanitary and unsafe conditions of the home. The trial court found that those conditions continued to exist, and there was no reasonable likelihood that respondent-father would rectify the conditions within a reasonable time considering the children's young ages. To be sure, the record demonstrates that respondent-father's apartment was clean and, although small, could be made safe for the children. On the other hand, the record leaves no doubt that respondent-father failed to complete domestic-violence counseling or classes required by his case service plan. Respondent-father asserted to the trial court that he was in therapy to deal with his problems that led to domestic-violence incidents. But respondent-father's therapist made very clear that she was not certified as a domestic-violence counselor and her services did not address domestic violence specifically. Respondent-father's admission of domestic violence, whether or not he was the aggressor, and his refusal to actively address it, provided cause for concern. Hence, under the circumstances, the trial court did not err by finding that respondent failed to rectify the condition of domestic violence and was not reasonably likely to do so within a reasonable time.

Pursuant to MCL 712A.19b(3)(c)(*ii*), the trial court identified other conditions bringing the children within the jurisdiction of the court, such as mental stability, transportation, housing, and mental health. The conditions of housing and transportation did not apply to respondent-father, who had his own apartment and transportation. But the conditions of mental stability and mental health remained concerns throughout the proceedings.

Respondent-father had issues with anger management, externalizing blame, minimizing the gravity of situations, and abrasive communication. Furthermore, psychological examinations resulted in a diagnosis of cannabis-use disorder. Although respondent-father insisted he stopped using marijuana and was maintaining his sobriety, the court report prepared for the August 2024 termination hearing revealed that respondent-father tested positive for THC[2] and refused to submit to several random drug screens, including as recently as July 2024. Refusal to submit to a random drug test constitutes a presumed positive result. *In re Atchley*, 341 Mich App 332, 344; 990 NW2d 685 (2022). Beyond that, respondent-father used and planted an audio recording device, he sent threatening text messages to his caseworker, and he apparently continued to use drugs, which leads to the conclusion that he failed to address his mental-health issues that arose during the proceedings even after he was made aware of the issues and afforded an opportunity to address them.

The trial court also found, pursuant to MCL 712A.19b(3)(g), that respondent-father failed to support the children even though he was employed and financially able to do so. The record contains conflicting evidence about the degree of financial support that respondent-father provided for his children. The trial court found that respondent-father furnished "a few scant things" for the children after they were removed, including some clothing and "occasional diapers." Respondent-father contends that he financially supported his children and their mother before the children were removed, and that he continued to support the children with "necessary items" after the children were removed. Respondent-father also notes that he spent significant amounts of money obtaining and furnishing an apartment and paying for his mental-health counseling. Despite all that, the trial court determined that respondent-father would not adequately provide for his children. We defer to the trial court's ability to judge respondent-father's credibility as to whether he would provide adequate support for his children if they were returned to his care. See *In re Medina*, 317 Mich App at 227.

Finally, the trial court found that the children faced a reasonable likelihood of harm if they were returned to respondent-father's care, as contemplated by MCL 712A.19b(3)(j). Respondent-father failed to address his issues regarding domestic violence and mental health that were part of his treatment plan. Respondent-father also did not complete all the parenting-education services that were provided to him. "[A] parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014). Further, respondent-father continued using marijuana and never displayed parenting skills sufficient to allow him longer parenting-time visits, or unsupervised visits, with his children. Under these circumstances, the trial court did not clearly err by finding that the children faced a reasonable risk of harm if returned to the care of respondent-father.[3]

---

[2] "Tetrahydrocannabinol, or THC, is the physiologically active component of marijuana. See *Stedman's Medical Dictionary* (26th ed), p 1791." *People v Koon*, 494 Mich 1, 3 n 3; 832 NW2d 724 (2013).

[3] Respondent-father contests the validity of the trial court's assessment of the risk that the children faced if returned to his care by asserting that the twin boys were sexually abused by a third party.

In sum, the trial court did not clearly err by finding statutory grounds for termination under MCL 712A.19b(3)(c)(*i*), (3)(c)(*ii*), (3)(g), and (3)(j).

## B.  BEST INTERESTS

If a trial court finds, by clear and convincing evidence, that a statutory ground supports the termination of parental rights, the trial court must order termination of parental rights if that result is in the best interests of the child.  MCL 712A.19b(5); see also *In re Beck*, 488 Mich 6, 11; 793 NW2d 562 (2010).  Whether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence.  *In re Moss*, 301 Mich App at 90.  In making a best-interest determination, the trial court must focus on the child, not the parent.  *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016).  The trial court must "weigh all the evidence available to determine the children's best interests," and should consider factors such as the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.  *In re White*, 303 Mich App at 713. "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child[]'s well-being while in care, and the possibility of adoption."  *Id*. at 714.  The trial court may also consider the likelihood that the child's safety and well-being would be ensured if the child were returned to the parent's care.  See *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011).

Respondent-father claims the trial court clearly erred because the evidence does not reflect that termination of his parental rights was in his children's best interests.  Respondent-father also contends that the trial court clearly erred by not considering every salient factor in its best-interest analysis.  We reject both of those arguments.

Respondent-father failed to comply with the domestic-violence-counseling component of his treatment plan, and he showed no benefit from the counseling that he did receive.  Respondent-father also displayed inadequate parenting skills, despite years of services, and failed to complete all the parenting-education services provided to him.  Although respondent-father had a bond with the twin girls, those children were at least equally bonded with their foster placement.  Respondent-father had little to no bond with the twin boys.

The trial court found that the children needed safety, stability, and permanency.  The trial court noted that the twin boys were in a relative's care, but nonetheless concluded that termination was in the children's best interests.  Considering respondent-father's minimal progress addressing his barriers to reunification, there was ample evidence that respondent-father was not in a position to provide the children with the safety, stability, and permanency they needed.

Respondent-father contends that the trial court erred by not determining the best interests of each child individually.  Specifically, he faults the trial court for failing to consider that the twin

---

But respondent-father presents no authority stating why that allegation has any bearing on the trial court's determination that the children faced a reasonable risk of harm if returned to him.  "A party may not merely announce his position and leave it to us to discover and rationalize the basis for his [or her] claim."  *In re Toler*, 193 Mich App 474, 477; 484 NW2d 672 (1992).

girls were old enough to express their preferences regarding parental visitation and that they had a stronger bond with respondent-father. "[T]he trial court has a duty to decide the best interests of each child individually." *In re Olive/Metts*, 297 Mich App at 42. But a trial court does not err if it "fails to explicitly make individual and—in many cases—redundant factual findings concerning each child's best interests." *In re White*, 303 Mich App at 715-716. The trial court has to explicitly address the individual children only when their best interests significantly differ. See *id*. at 715.

The trial court considered the children's best interests collectively, and as two sets of twins. The best interests of each set of twins did not differ significantly, given that each set of twins was exactly the same age and each set of twins was placed together. Respondent-father's assertion that the trial court did not consider the twin girls' bond with him is unsupported in the record. The trial court heard testimony from respondent-father and others regarding the twin girls' attitude toward respondent-father and his parenting visits. Under these circumstances, we find no error in the trial court's decision not to render its findings and conclusions on the record as to each of the children individually.

Finally, respondent-father insists that the trial court erred by failing to consider the barriers he faced in bonding with his children because he was merely a putative father early in the case, and he was restricted by time and conditions when he had visits with his children. Respondent-father made his frustration with those barriers well known on the record, and we find no reason to believe that the trial court was unaware of them. Accordingly, the trial court did not clearly err by finding that termination of respondent-father's parental rights was in the best interests of each of his children. See *In re Olive/Metts*, 297 Mich App at 40.

Affirmed.

/s/ Brock A. Swartzle
/s/ Kristina Robinson Garrett
/s/ Christopher P. Yates

-6-